UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| MARLON JOHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 4:20-cv-66 |
| | ) |
| SOUTHWIRE COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, Marlon John ("John"), brings this action against Defendant, Southwire Company, LLC ("Defendant"), for unlawfully violating his rights as protected by 42 U.S.C. § 1981.

## PARTIES

2. John has resided within the Northern District of Indiana at all relevant times.

3. Defendant is a corporation doing business within the Northern District of Indiana.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 42 U.S.C. § 1988; and 42 U.S.C. § 1981.

5. John is a "person" within the meaning of 42 U.S.C. § 1981.

6. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

7. John is an African-American (Black) male.

8. Defendant hired John for an Operator position at its Lafayette facility on or about January 23, 2016. He initially ran CV8 and then moved to CV6.

9. Defendant and John had an employment relationship that was contractual in nature.

10. Defendant, through its employees, created a hostile work environment for John because of his race. The harassment was severe or pervasive and altered the terms and conditions of his employment. The racial harassment commenced soon after he began working for Defendant and continued until the harassment forced him to take a medical leave for his emotional and mental distress.

11. The employees communicated multiple offensive racial statements to John, including, but not limited to: calling him "nigger" many times; declaring "white power" or "WP" to him many times; telling many racial jokes to him; referring to him as the "colored boy on CV6" many times; telling him stories about the KKK; and referring to an employee as "Hard-R Mike" with "R" being for "Racism." Multiple Caucasian employees wore racist tattoos on their legs and arms, including Aryan Brotherhood symbols, Nazi lightning bolts, and a circle with the one percent mark. The tattoos were visible when the employees wore shorts or short-sleeve shirts. The employees threatened John physically by telling him they could handle him outside of work. Multiple employees repeatedly visited his work station without any reason to stand and stare at him.

12. On or about March 27, 2020, one Caucasian employee took his racist conduct to actualization of physical harm to John by pouring Visine into his water jug, with John becoming physically sick after he drank the water. The employee acknowledged to another employee in John's presence that he had already drunk the tainted water and declared: "Fuck that nigger!" John filed a police report and reported the racist behavior to Defendant.

13. John complained many times about the hostile work environment to Defendant between 2016 and April 2020. Defendant took no legitimate action designed to remedy the hostile environment as evidenced by the fact that the racial harassment continued unabated.

14. Defendant did not even instruct the Caucasian employees with racist tattoos to cover them with clothing. Instead, at best, Defendant's management and human resources employees told John that his coworkers were merely jealous of him; that he should be the bigger person and overlook the bad conduct; and that the racist tattoos no longer reflected who they were after they left prison.

15. The racial harassment significantly impacted John mentally and emotionally. Because of the harassment, he sought ongoing diagnosis and treatment by a doctor. The doctor diagnosed him with anxiety and prescribed medication for him. John advised Defendant several times that he was taking prescribed medications for anxiety arising from the hostile work environment. He took time off from work due to the harassment, including in 2018 and April 2020.

16. John was off work from in or about April 2020 to on or about June 29, 2020. Since he went on leave, Defendant refused to acknowledge the hostile environment and to take appropriate actions to remedy the same. The race harassment and Defendant's deliberate inaction forced John to resign his employment on or about June 29, 2020. In essence, Defendant constructively discharged him.

17. At least two other African-American employees have likewise been subjected to the racial harassment – Maurice Holley and Derek Burton – and complained about the same to Defendant.

18. Defendant took adverse employment actions against John because of his race and/or statutorily-protected conduct.

19. All reasons proffered by Defendant for adverse actions it took regarding John's employment are pretextual.

20. John has suffered injury and harm as a result of Defendant's unlawful actions, including, but not limited to, lost wages, lost benefits, emotional distress, inconvenience, humiliation, embarrassment, anger, disgust, frustration, and similar emotions.

## COUNT I

## RACE HARASSMENT – 42 U.S.C. § 1981

21. John hereby incorporates paragraphs 1-20 of his Complaint.

22. Defendant subjected John to a racially-hostile work environment.

23. John complained about the racially-hostile work environment to Defendant.

24. Defendant took no action to remedy the hostile work environment.

25. Defendant forced John to take leave and constructively discharged him

26. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of John's rights as protected by 42 U.S.C. § 1981.

## COUNT II

## RETALIATION – 42 U.S.C. § 1981

27. John hereby incorporates paragraphs 1-26 of his Complaint.

28. John engaged in statutorily-protected activities.

29. Defendant took adverse employment actions against John because of his statutorily-protected activities, including constructive leave and constructive discharge.

30. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of John's rights as protected by 42 U.S.C. § 1981.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff, Marlon John, by counsel, respectfully requests that this Court find for him and order that:

1. Defendant reinstate John to the same position, salary, and seniority, or pay front pay and benefits to him in lieu of reinstatement;

2. Defendant pay lost wages and benefits to John;

3. Defendant pay compensatory and punitive damages to John;

4. Defendant pay pre- and post-judgment interest to John;

5. Defendant pay John's attorneys' fees and costs incurred in litigating this action; and

6. Defendant pay to John any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

Respectfully submitted,


John H. Haskin, Attorney No. 7576-49
Bradley L. Wilson, Attorney No. 21154-49
Shannon L. Melton, Attorney No. 29380-49

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:   (317)955-9500
Facsimile:   (317)955-2570
Email:       jhaskin@jhaskinlaw.com
             bwilson@jhaskinlaw.com
             smelton@jhaskinlaw.com
Attorneys for Plaintiff: Marlon John

## **DEMAND FOR JURY TRIAL**

      Plaintiff, Marlon John, by counsel, respectfully requests a jury trial for all issues deemed triable.

      Respectfully submitted,

John H. Haskin, Attorney No. 7576-49
Bradley L. Wilson, Attorney No.  21154-49
Shannon L. Melton, Attorney No. 29380-49

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:	(317)955-9500
Facsimile:	(317)955-2570
Email:	jhaskin@jhaskinlaw.com
	bwilson@jhaskinlaw.com
	smelton@jhaskinlaw.com
Attorneys for Plaintiff: Marlon John